**J. W. Pendleton for use of The James Leffel & Company, Plaintiff in Error, v. Bernard Petchaft and Globe Laundry Company, Defendants in Error.**

**Gen. No. 23,521.**

1.   CHATTEL MORTGAGES, § 267*—*when failure to give mortgagor statutory notice after sale of property is not excused.* Failure to comply with the requirements of Rev. St. ch. 95, sec. 26 (J. & A. ¶ 7603), as to giving notice to the mortgagor within 10 days after the sale of property under a chattel mortgage, cannot be excused on the ground that the mortgagor's whereabouts could not be ascertained where his post office address was known.

2.   CHATTEL MORTGAGES—*when mortgagee not required to account to mortgagor.* A mortgagee under a chattel mortgage who disposes of his mortgage for an amount in excess of that due him under the mortgage is not required to account to the mortgagor for the excess.

Error to the Municipal Court of Chicago; the Hon. JOHN RICH-ARDSON, Judge, presiding. Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at the October term, 1917. Affirmed in part, reversed in part and judgment here. Opinion filed April 24, 1918. Rehearing denied May 10, 1918.

HELMER, MOULTON, WHITMAN & WHITMAN, for plaintiff in error; CHARLES R. HOLTON, of counsel.

LEVISOHN & LEVISOHN, for defendants in error; ISRAEL COWEN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff seeks to reverse a judgment of the Municipal Court of Chicago, discharging Bernard Petchaft and Globe Laundry Company as garnishees. The record discloses that James Leffel & Company obtained a judgment against J. W. Pendleton, and, after a return of an execution *nulla bona,* brought garnishment in the name of Pendleton for its use against Bernard Petchaft, the Globe Laundry Company and Michael Tauber & Company. The three defendants were served and answered that they had no money or property in their possession belonging to Pendleton. The answers were contested. Michael Tauber & Company was, on motion of plaintiff, dismissed and the court found in favor of the other two defendants.

Pendleton was the owner of the Snow Flake Laundry and executed two chattel mortgages, one to Fred W. Hunt and the other to the Fred Rentz Paper Company, upon the laundry machinery. A few days prior to December 7, 1916, Hunt took possession of the machinery under his chattel mortgage and advertised that a sale of the same would take place on that date. Shortly before the time set for the sale, Bernard Petchaft purchased the two chattel mortgages and took an assignment thereof. His attorney then went to the Snow Flake Laundry where the machinery was located and a number of persons had assembled to

bid at the sale. The attorney was met by one Levy who stated he was from Michael Taüber & Company, and was there to represent the Globe Laundry Company, as it desired to purchase the property at the sale. A Mr. Luckow, secretary and treasurer of the Globe Laundry Company was also present. After a conference between these parties it was agreed that the Globe Laundry Company would purchase the two mortgages and another claim of Petchaft's for $2,250, and to carry this out papers were drawn purporting to assign the mortgages and the other claim to Michael Taüber & Company. The Globe Laundry Company then gave its check for $500 on account of the purchase price, made payable to Michael Tauber & Company, and the check was indorsed by Levy, who said he was representing Michael Tauber & Company, and delivered over to Petchaft's counsel. At this time Leo B. Lowenthal, an attorney, arrived at the place and presented some wage claims, and a few minutes later stated he was acting as attorney for the Globe Laundry Company, and requested that he be permitted to see the papers to ascertain whether everything was all right. The papers were examined and he told counsel for Petchaft to call next day, when the balance of $1,750 would be paid. The parties then left, and apparently nothing was done in regard to the sale under the chattel mortgage. The next day counsel for Petchaft called on Lowenthal and the latter delivered to him a check of the Globe Laundry Company for the balance of the purchase price, or $1,750. The Globe Laundry Company also gave its check for $100 to Michael Tauber & Company, which apparently was intended to be in payment for services. A few days afterwards, at 8:30 o'clock in the morning, Lowenthal, Levy, Luckow and two other parties went to the place where the laundry machinery was located, and Levy purported to offer the machinery for sale under the Hunt mortgage. Luckow, representing the Globe

Laundry Company, bid $1,200, and it was sold to him.
Thereafter the machinery was removed by the Globe
Laundry Company. There is no evidence that this
$1,200 was ever paid, and Luckow testified on the trial
that he paid $2,250 to Petchaft and $100 to Michael
Tauber & Company, for the purpose of purchasing the
laundry machinery. On the trial Michael Tauber tes-
tified that Levy had no connection with the Michael
Tauber & Company at any time, and had no authority
to represent it in any of the matters mentioned or any
other matter, and that the $100 was never received by
Michael Tauber & Company, or any other sum. Luckow
testified that he was familiar with the value of laun-
dry machinery, as he had been in the laundry business
for 37 years, and that the machinery in question was
worth at the time of the sale $2,200.

Section 26, ch. 95, Rev. St. (J. & A. ¶ 7603) provides
that upon the sale of another's property under a chat-
tel mortgage, the "mortgagee shall make out a state-
ment showing the items of personal property sold, the
names of each purchaser and the amount for which
each article sold, and also an itemized statement of the
necessary reasonable expenses incurred in taking,
keeping and selling said property, and shall deliver
the same to the mortgagor   *   *   *   in person or
by mail, and if he fails so to do within ten days after
said sale, the owner of said property may sue for
and recover one-third of the value of the property
so sold, from the mortgagee or person making said
sale as assignee of said mortgagee." The undis-
puted evidence is that the notice of sale provided
for in the statute was not given to Pendleton, the
mortgagor, and no attempt was made to do so. The
Globe Laundry Company has filed no brief in this
court, but the brief on behalf of Petchaft contends
that it was unnecessary to comply with this section
of the statute for the reason that a few days prior
to the sale Petchaft's attorney had written Pendle-

ton a letter, which he saw unopened at the laundry; that Pendleton was not then at his former address, a few blocks from the laundry, and that his whereabouts were unknown and could not be ascertained.    In *Aoskad v. Packard Motor Car Co.*, 195 Ill. App. 251, there was a sale of property under a chattel mortgage, and within 10 days thereafter a statement of the sale was delivered to the mortgagor, which apparently met all the requirements of section 26, except that the name of the purchaser at the sale was not given.    The court there said (253): "We cannot hold there is a substantial compliance with the statute when a distinct and unambiguous requirement is omitted.    If the omission of one requisite is not fatal, it could with equal force be said that with two requirements omitted there is still a substantial compliance, and if with two omitted, why not with three or more?    Where shall the line be drawn?    We see no reason to hold that any one of the statutory requirements may be omitted.    *    *    * The statute places upon the mortgagee the duty of supplying this information to the mortgagor, regardless of other sources of information he may have, or resulting harm or benefit to him."    In that case a judgment for the penalty provided in section 26 was affirmed.    To the same effect is *Rogers v. Weller*, 187 Ill. App. 314.

The statute requires notice to be given to the mortgagor within 10 days in person or by mail, and the failure to do so cannot be excused on the ground that the mortgagor's whereabouts could not be ascertained, where the evidence is that they know his post office address.    If the mortgagor had left the city for a few days, manifestly this would not excuse a compliance with the statute.    The statute was not complied with, and therefore the mortgagee, or his assigns, are liable for one-third of the value of the property.    Luckow testified the property was worth $2,200; one-third of this would be $733.    The Globe Laundry

Company was the assignee of the mortgage. The undisputed evidence shows that Michael Tauber & Company had no interest in it, and as the sale of the property took place after the Globe Laundry Company purchased the mortgage, and as the provisions of section 26 were not complied with, the Globe Laundry Company is liable to the mortgagee Pendleton for the use of Leffel & Company for $733. The court therefore erred in finding in favor of this defendant.

What we have said disposes of plaintiff's contention that Petchaft should be held liable. It is argued that as Petchaft received $2,250 for the two mortgages and as there was but $1,330 due him under them, he should account for the excess to the mortgagor. We know of no reason why a mortgagee may not dispose of chattel mortgages without accounting in any manner to the mortgagor, as the latter is in no way affected. The judgment of the Municipal Court of Chicago is reversed as to the Globe Laundry Company, but in all other respects it is affirmed. As the facts are undisputed, it will be unnecessary to remand the cause, but judgment will be entered in this court in favor of J. W. Pendleton, for the use of James Leffel & Company, a corporation, and against the Globe Laundry Company, a corporation, for $773.

*Affirmed in part, reversed in part and judgment here.*